406 So.2d 178 (1981)
SOUTHERN FARM BUREAU CASUALTY INSURANCE COMPANY
v.
Wilson J. SONNIER.
No. 81-C-1315.
Supreme Court of Louisiana.
November 16, 1981.
*179 J. Minos Simon and Gerald J. Block of Simon & Dauterive, Lafayette, for defendant-applicant.
Richard Meaux and M. Candice Hattan of Davidson, Meaux, Sonnier & Roy, Lafayette, for plaintiff-respondent.
DENNIS, Justice.
The issue presented here is whether an insurer that pays medical and funeral expenses under its automobile insurance policy may be subrogated conventionally to its insured's right against a third party tortfeasor, and, if so, whether it may enforce the right prior to its insured's recovery of the entire amount due him. Both lower courts decided that the insurer is entitled to be paid in preference to its insured out of any proceeds either recovers from the tortfeasor. Southern Farm Bureau Cas. Ins. v. Sonnier, 396 So.2d 996 (La. App. 3d Cir. 1981). We reverse. An insurer that makes payment to its insured pursuant to its medical payments coverage may enforce a conventional subrogation agreement contained in its policy. Subrogation cannot injure the insured, however, and if he has been paid only in part for his damages, he may exercise his right for what remains due in preference to his insurer.
As reflected by the court of appeal opinion, the parties stipulated the following facts:
"Mr. and Mrs. Wilson J. Sonnier's son died in a car-train collision on August 9, 1974. Southern Farm, pursuant to a medical payments clause in the insurance policy, paid Wilson J. Sonnier $2758.40 for his son's funeral expenses. The Sonniers sued Missouri-Pacific in federal district court for the wrongful death of their son. On June 3, 1977, the jury found Missouri-Pacific negligent and awarded the Sonniers $103,160 in damages. The award included $3,160 to Wilson J. Sonnier for his son's funeral expenses. Missouri-Pacific appealed.
"Southern Farm learned of the suit from a newspaper clipping forwarded by an agent to its Baton Rouge offices six days after the judgment. Southern Farm contacted Sonnier's attorney to collect the $2758.40, relying upon a subrogation *180 clause contained in the insurance policy. Before it could be determined whether Sonnier would honor Southern Farm's claim, the Sonniers settled their suit against Missouri-Pacific for $90,000 on March 21, 1978. The next day, Sonnier's attorney informed Southern Farm Sonnier would not honor its claim. Southern Farm filed suit on March 28, 1978." 396 So.2d at 997.
The automobile insurance policy issued by Southern Farm in Sonnier's favor contained the following clause:
"11. Subrogation. Upon payment of any loss covered under this policy, the Company shall succeed to all the rights of recovery of the insured, or any other person in whose behalf payment is made, and they shall execute and deliver instruments and papers and do whatever else is necessary to secure such rights, and shall do nothing after loss to prejudice such rights."
The court of appeal correctly held that when Southern Farm paid the loss of medical and funeral expenses covered under its policy it became subrogated to the extent of this payment to Sonnier's claim against Missouri-Pacific Railroad Company. Conventional subrogation occurs when the creditor, receiving his payment from a third person, subrogates him in his rights, actions, privileges, and mortgages against the debtor; this subrogation must be "expressed and made at the same time as the payment." La. C.C. art. 2160. However, when Article 2160 says of the conventional subrogation that it must be "made at the same time as the payment," it does not mean that the agreement of subrogation cannot be entered into before, or in anticipation of, the payment, but simply that it cannot be entered into after the payment. Cox v. W. M. Heroman & Co., Inc., 298 So.2d 848 (La. 1974); Cooper v. Jennings Refining Co., 118 La. 181, 42 So. 766 (1907); State Farm Fire & Casualty Co., et al. v. Sentry Indemnity Co., et al., 346 So.2d 1331 (La. App. 3d Cir. 1977); 2 M. Planiol, Civil Law Treatise, pt. 1, no. 480(2) (11th ed. La. St. L. Inst. Trans. 1959).
Nevertheless, subrogation cannot injure the creditor, since, if he has been paid but in part, he may exercise his right for what remains due, in preference to him from whom he has received only a partial payment. La. C.C. art. 2162. Thus, when the creditor has received from the subrogee a partial payment only, the credit is divided between them; the original creditor remains creditor for the unpaid portion and the subrogee becomes creditor to the extent of the payment he has made. 2 M. Planiol, supra, nos. 515, 516 at 286. As this court observed in Cox v. W. M. Heroman & Co., Inc., 298 So.2d 848, at 856:
"[I]n a subrogation the interest of a creditor... in receiving payment of his debt in return for subrogating the third party to his right to recover it, outweighs the interest of the debtor ... in avoiding the division of the debt he owes into multiple claims, the policy preventing partial assignments." [citations omitted]
According to French jurisprudence dating back as far as 1712, the original creditor or subrogor is always preferred to the subrogee in such a case; he comes before the latter, and the subrogee can only claim that which remains after the subrogor has been paid. This was the rule in the time of Pothier and the Civil Code (C.N. 1804, art. 1252) expressly recognizes this right of preference accorded to the subrogor against the subrogee. 2 M. Planiol, supra. Accordingly, when an insurer pays his insured only part of the damages to which the insured is entitled from a tortfeasor, the insurer becomes only partially and subordinately subrogated to the insured's right, and the insured is entitled to exercise his right for the balance of the partially paid claim in preference to the insurer-subrogee. See Carter v. Bordelon, 370 So.2d 113 (La. App. 1st Cir. 1979); Legendre v. Rodrigue, 358 So.2d 665 (La. App. 1st Cir. 1978).
Moreover, in a partial subrogation the debt is divided between the subrogor and subrogee, making them either joint or several obligees, and allowing each to exercise his right without prejudice to the other. See Cox v. W. M. Heroman & Co., Inc., *181 supra. The reason that the original creditor or subrogor is always preferred to the subrogee in a partial subrogation is explained by means of an implied agreement. "Pothier, who was quite familiar with the origin of this rule, says: `The creditor who is paid with the money of another is not obliged to subrogate the payor, except insofar as it will not be prejudicial to him; consequently, in subrogating the payor to the mortgages ... securing his credit, he is considered as having reserved to himself a right of preference as to what remains unpaid.'" 2 M. Planiol, supra, no. 516. See 7 M. Planiol and M. Ripert, Traite pratique de droit civil francais 647 (2 me ed. Esmein 1954). In accordance with this underlying policy, we conclude that the partial subrogee is accorded merely the right of a joint or several obligee. It would be inconsistent with the legislative scheme to allow the partial subrogee to exercise the prerogatives of a solidary obligee. As Planiol observed, solidarity between creditors is almost without application in civil matters and may be considered a dead institution; its capital inconvenience being that it puts all of the creditors at the mercy of one of them, since each can, at maturity, collect the total and appropriate it to himself or dissipate it. 2 M. Planiol, supra, nos. 725, 731. Furthermore, active solidarity may be created by contract or by testament, but it is never established by operation of law. La. C.C. art. 2088; 2 M. Planiol, supra, no. 726; 4 C. Aubry and C. Rau, Droit civil francais § 298a (6th ed. Bartin) in A. Yiannopoulos, 1 Civil Law Translations 12 (1965). It is unnecessary for us to decide in this case whether the subrogor and subrogee in a partial subrogation are joint or several obligees,[1] since either type of obligee enjoys an independent substantive right which he may exercise against the debtor.[2] From a procedural standpoint, however, it should be noted that if there has been a partial subrogation, and the suit is brought only by the subrogor or the subrogee, there is a non-joinder of a necessary party. See La. C.C.P. art. 642; art. 697; and Comment (c) under 697; see also, La. C.C. art. 2085; 1 S. Litvinoff, Obligations, § 22 in 6 Louisiana Civil Law Treatise 41 at n. 71 (1969). If the defendant fails to object timely to the non-joinder of a necessary party, in a case of partial subrogation, the objection is waived and the court may make an adjudication. But if, in such a case, the partial subrogation is proven, the plaintiff may recover only his interest in the partially subrogated claim. See Comment (c) under La. C.C.P. art. 697.
Accordingly, we conclude that, upon Southern Farm's payment to its insured, the debt of the railroad was divided between it and Sonnier, causing them to become either several or joint obligees, and that the subsequent actions of Sonnier in exercising his right to collect his part of the credit had no prejudicial effect upon the insurance company's right. Moreover, Sonnier, as a partial subrogor, had a lawful cause of preference over the insurer for payment out of his debtor's property and was entitled to pursue his legal remedies for what remained due him. La. C.C. art. 2162. We set to one side without deciding the remaining issues discussed in the court of appeal opinion. Since the additional questions are not relevant in view of our decision, we express neither approval nor disapproval of the court of appeal's disposition of them.
For the reasons assigned, the judgments of the trial court and court of appeal are reversed and judgment is rendered herein in favor of Wilson Sonnier rejecting Southern *182 Farm's demands and assessing all court costs to the insurance company.
REVERSED AND RENDERED.
LEMMON, J., dissents and assigns reasons.
LEMMON, Justice, dissenting.
Missouri-Pacific owed the full amount of damages to Sonnier. Distribution of the proceeds of the claim for damages was a matter of concern between Sonnier and Southern Farm Bureau. Had Missouri-Pacific paid Sonnier the full amount of damages, Southern Farm Bureau would not have been precluded from asserting its subrogation right against Sonnier. Neither should Missouri-Pacific's payment to Sonnier of a discounted amount of damages (in settlement of the pending appeal) preclude Southern Farm Bureau from asserting its subrogation claims against Sonnier, when Sonnier knew at the time of settlement that Southern Farm Bureau was still seeking reimbursement.
Since Sonnier settled for 87% of the total damages, I would award Southern Farm Bureau 87% of its subrogation claim, minus the amount of attorney's fees due Sonnier's attorney for recovery of that amount.
NOTES
[1] See La. C.C. arts. 2077, et seq., 1 S. Litvinoff, Obligations § 22 in 6 Louisiana Civil Law Treatise 41 at n. 71 (1969); see 4 C. Aubry and C. Rau, Droit civil francais § 198 (6th ed. Bartin) in A. Yiannopoulos, 1 Civil Law Translations 12 (1965).
[2] See La. C.C.P. art. 643, comment (a); Preliminary Statement Book I, Title III, Chapter 1, Joinder, La. C.C.P.; McMahon, Joinder of Parties in Louisiana, 19 La. L. Rev. 1 (1958); Brown, Substantive and Procedural Aspects of Joint, General and Joint and Several Obligations, 14 La. L. Rev. 828 (1954).